# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| KENNETH JORDAN,<br><br>        Plaintiff,<br><br>v.<br><br>MICHAEL COCKROFT,<br>JAMES E. DOYLE, JR., KAREN PAULSEN,<br>KELLY QUARLES, PATRICIA GUIBORD,<br>MARK HEISE, GERALD KONITZER, and<br>ANGELA ALT,<br><br>        Defendants. | Case No. 08-CV-1092-JPS<br><br><br><br>ORDER |

       The plaintiff, Kenneth Jordan, is a state prisoner proceeding *pro se* on claims under 42 U.S.C. § 1983 related to his termination from work release and the elevation of his security status following a complaint regarding his placement from a family member of a victim. The plaintiff was allowed to proceed on a "class of one" equal protection claim against all of the defendants as well as claims that defendants Paulsen, Quarles, Guibord, Heise, and Konitzer conspired to deprive him of his equal protection rights under the Fourteenth Amendment. Now before the court are the plaintiff's motion for summary judgment, the defendants' motion for summary judgment, and the plaintiff's motion to dismiss his claims against Angela Alt.

1.    Summary Judgment Standard

       "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S.

317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

2. Factual Background[1]

    2.1    Parties

The plaintiff, Kenneth Jordan, is a state prisoner in the custody of the Wisconsin Department of Corrections (DOC).

Defendant James Doyle was the Governor of the State of Wisconsin from January 2003 until January 2011. The remaining defendants are DOC employees. Defendant Mark Heise is the Director the Bureau of Offender

---

[1]The facts are taken from the parties' proposed findings of fact and affidavits, to the extent they are relevant and admissible.

Classification and Movement (BOCM). Defendant Michael Cockroft is the Superintendent of the Felmers O. Chaney Correctional Center (FCCC) in Milwaukee, Wisconsin. Defendant Gerald Konitzer is a Corrections Classification Management Supervisor (Sector Chief) for the BOCM. Also at the relevant times, defendant Heather Paulsen was an Offender Classification Specialist - B at the Milwaukee Secure Detention Facility (MSDF), defendant Kelly Quarles was a Unit Supervisor at MSDF, and defendant Patti Guibord was a Social Worker - C at MSDF. Defendant Angela Alt is an Offender Classification Specialist at Oakhill Correctional Institution (Oakhill).

2.2   Events

In the early 1970's, the plaintiff participated in the robbery of a tavern while armed. An off-duty Milwaukee police officer was shot and killed in the commission of the crime, though the plaintiff was not the shooter. The plaintiff was convicted of first degree murder, as a party to the crime, and attempted armed robbery. He was sentenced to life in prison plus fourteen years and placed in DOC custody on July 31, 1974. Later, while in prison, the plaintiff was convicted of battery by a prisoner and sentenced to fifteen months.

On May 20, 2005, the plaintiff was transferred to the FCCC in minimum community custody. In March 2006, he began work release. He obtained a full time permanent position with Patrick Cudahy, Inc.

Pursuant to Wisconsin Administrative Code § DOC 302.04, the purpose of a custody classification is to determine the appropriate placement of an inmate in order to regulate the supervision and movement of inmates among and between institutions. Pursuant to Wis. Admin. Code § DOC 302.19, the Director may transfer an inmate to any facility authorized by the

DOC according to program review procedures that include factors used in assigning a custody classification.

Program Review Committee (PRC) members conduct inmate interviews at correctional institutions. They use file reviews to evaluate and recommend inmate classification and transfers if the inmate waives his appearance. The PRC classifies every inmate based upon risk factors relative to public safety, institutional security, staff and inmate safety, and, to the extent possible, match inmate needs to institution resources. There are five custody classification levels. The two that are relevant to this case are minimum custody, which requires general monitoring of inmate conduct, behavior and activities inside the institution and permits placement outside the confines of the institution, and community custody, which requires limited monitoring of inmate conduct, behavior and activities. Community custody is used for work release, off-grounds projects, driving institution vehicles, and other programs that the DOC may establish.

On or about March 22, 2007, Cockroft received a telephone call from the daughter-in-law of the murder victim. She stated that she knew of the plaintiff's placement at FCCC and she wanted to make a formal complaint about the appropriateness of his placement there as the plaintiff's crime took place directly across the street from the FCCC. Cockroft informed his immediate supervisor, Warden Mickey McCash, and Heise of the situation. Cockroft was directed to send the plaintiff to temporary lock up (TLU), pending an investigation. On March 22, 2007, the plaintiff was placed in TLU status pending transfer to a different facility. Later that day, the plaintiff was transferred to MSDF.

MSDF functions as a holding facility for adult men who have violated the terms and conditions of community supervision. It also provides alcohol and other drug abuse (AODA) programming, and functions as a prison for inmates sentenced to the DOC or TLU from local minimum security institutions.

The plaintiff was informed by defendant Cockroft that he was having him relocated to the Kenosha Correctional Center (KCC) "due to some community concerns." Cockroft told members of the plaintiff's family that he had done nothing wrong, that he would still have his work release privileges, and that he was only being transferred to a different work release center. Cockroft directed social worker Reynolds to interview the plaintiff for PRC and recommend that the plaintiff be relocated to the KCC.

On March 22, 2007, social worker Reynolds interviewed the plaintiff for the Program Review Committee (PRC) hearing scheduled for March 23, 2007. Reynolds noted that this served as the scheduled recall and that the plaintiff wished to waive. He further noted that the plaintiff's risk rating was low in all areas, and that he was removed from work release by the FCCC superintendent and placed at MSDF pending PRC action to remove the plaintiff from the FCCC as a result of community objection to his placement in the community where his offense occurred. He also noted that the plaintiff had served approximately 34 years of a life sentence at that time, completed two institution commitments prior to beginning work release, and that the plaintiff had permanent full-time employment at Patrick Cudahy, Inc. Reynolds reviewed the Parole Commission's findings that the plaintiff had been classified as minimum custody for quite some time and had been on work release for less than six months and that more time for monitoring on

work release along with positive adjustment would assist in reducing his risk to a more reasonable level. The plaintiff requested an immediate transfer to the KCC, and Reynolds informed him of the Parole Commission hearing scheduled for April 2007.

Based on his review of the plaintiff's offense, sentence structure, program participation, security needs, institution behavior and risk rating, Reynolds recommended no change in custody but that the plaintiff be placed outside of Milwaukee, with placement at KCC and the superintendent of the center determining work eligibility.

The plaintiff met with the PRC, Paulsen and Quarles, for an early review on March 23, 2007, due to possible transfer in location. The plaintiff was informed that the review would address custody, placement, and program issues. The PRC noted that the plaintiff's program participation had been excellent and that his institution assignment was work release. The PRC further noted that the plaintiff had received 86 minor conduct reports and 36 major conduct reports, with his latest major conduct report dated April 18, 1999, for disobeying orders while housed out of state. The plaintiff requested immediate transfer to KCC, and the PRC noted that he was low risk in all areas. Based on the review of the plaintiff's offense, sentence structure, program participation, security needs, low risk rating, institution behavior, and the need to relocated the plaintiff, the PRC recommended continued minimum community custody with transfer to KCC and temporary custody at the Racine Correctional Institution (RCI). A recall was scheduled for March 2008 based on the expectation that the plaintiff would have no significant changes affecting custody or placement prior to his next recall.

On March 23, 2007, Heise reviewed the PRC recommendations and made the decision of community custody and transfer for temporary placement at RCI pursuant to Wisconsin Administrative Code § DOC 302. Katie Pollock added MSDF as a temporary placement on March 26, 2007. Then, on March 27, 2007, the plaintiff was transported to the KCC only to be returned to MSDF approximately three hours later. The plaintiff arrived at KCC and was in the process of receiving orientation when he was called to the control booth and placed in a temporary holding room before being returned to MSDF.

On April 4, 2007, the plaintiff was interviewed by defendant Guibord in preparation for an early recall to review custody level. The plaintiff was advised that the recall would address custody, placement, and program issues, and the plaintiff waived his appearance.

Guibord noted the plaintiff's crime, sentence structure, program participation, and institution behavior. She also noted that the plaintiff was currently involuntarily assigned and low in all areas of the risk rating. The plaintiff requested minimum community custody with a transfer to the KCC. However, based on her findings, Guibord recommended minimum custody and transfer and noted that a hold should be placed until the plaintiff was seen by the parole board.

The plaintiff's parole review hearing was conducted by Steve Landreman on April 13, 2007. Landreman reviewed the plaintiff's crime and sentencing, institution conduct, participation in recommended programs, parole plan, and risk to the community, and supported a move back to a minimum community site with another opportunity for work release at some point in the future. Landreman noted that the plaintiff needed to serve

additional time, maintain positive conduct, and continue to adjust well at minimum and with work release in order to further reduce his level of risk.

The PRC, consisting of Paulsen and Quarles, met with the plaintiff again on May 1, 2007, for early review to determine placement. The plaintiff was advised that the review was to address custody, placement, and program issues. The PRC reviewed the plaintiff's offense details, sentencing structure, program participation, security needs, and institution conduct. It was noted that the plaintiff received a major conduct report on May 1, 2007, for contraband - unauthorized transfer of property when his property was packed up after his transfer from the FCCC and items were found not belonging to him. The plaintiff's institution assignment was involuntarily assigned, and he again requested to keep his community custody with a transfer to the KCC. The PRC noted that the plaintiff was high in institution adjustment and low in remaining areas of risk rating. The PRC recommended an elevation in custody to minimum and a transfer to Oakhill and noted that the decision was based on expressed concern by the public and sentiments of the Milwaukee County Sheriff's Department and the Governor that the plaintiff be moved outside of Milwaukee County. It was noted that this affects the plaintiff's potential for parole because it increased his risk. A March 2008 recall was scheduled based on the sentence structure. The plaintiff was expected to maintain positive institution adjustment and work performance. The plaintiff's risk rating was increased and minimum placement at Oakhill was appropriate based on the Risk Rating Instructions.

On June 28, 2007, Heise reviewed the PRC recommendations and made the decision of minimum custody and transfer and placement at Oakhill. Pursuant to Wisconsin Administrative Code § DOC 302.07, the DOC

may consider facts in assigning a custody classification that include the risk to a victim, witness, the general public, or the inmate of placing the inmate in the community where the offense was committed or where the institution is located. In determining the risk, the department may consider the general public's perception of the offense and the inmate as evidenced by statements of elected officials, judges, sheriffs, district attorneys, a victim, or a witness. The plaintiff was transferred to Oakhill on July 11, 2007.

> The plaintiff appealed this decision on July 18, 2007, stating:
>
> This appeal is being raised due to the fact that I did not violate any rule, regulations or policies of the Center that I was housed in, nor did I violate any rules pertaining to my employment. I had been at the Felmers Chaney for 2 years and on work release for a year. At my last parole hearing, I was given a defer 8 with support for continued minimum community custody and work release. The PRC at MSDF recommended an upgrade in community custody due to what they claim were sentiments express by the Milwaukee County Sheriff's Department and the Governor, who wanted me moved out of Milwaukee.

(Affidavit of Mark Heise, Ex. 106). On September 6, 2007, Konitzer affirmed the original decision and noted: "Offense severity and sentencing structure were cause for custody elevation – Public sentiments are a valid consideration when determining your classification status." *Id.*

On December 12, 2007, the plaintiff requested an early PRC hearing. On January 18, 2008, a social worker noted that the plaintiff's recall was scheduled for April 2008 and Alt denied the plaintiff's request on February 8, 2008, noting that this recall was scheduled for April 8, 2008, and that he would be seen by his social worker the next month.

A social worker interviewed the plaintiff on March 4, 2008, and he asked to see the PRC for his scheduled recall. The social worker noted the plaintiff's offense history, sentence, program participation, and institution conduct. He noted that the plaintiff's risk was low and that he was on work release until he was removed in March 2007 by the FCCC Superintendent as a result of community objection to the plaintiff's placement in the community where his offense occurred. The plaintiff requested any southern work release center, or WCC or SPCC.

The PRC hearing was held on April 8, 2008, and the plaintiff was advised that the purpose of the review was to evaluate custody, program, and placement issues. The PRC noted the social worker's comments and recommendations, as well as the plaintiff's offense history, sentence, program participation, and institution conduct. After considering the plaintiff's offense, sentence structure, security requirements, program assignments, service needs, and available bed space, the PRC recommended custody reduction to minimum community custody with placement at the McNaughton Correctional Center (McNaughton), or temporary placement at the Dodge Correctional Institution, Jackson Correctional Institution, or Stanley Correctional Institution. The plaintiff expressed concern about placement up north but was amenable to it if there were no other options. The PRC noted that the time frame was sufficient for placement up north prior to returning to the point of release. The plaintiff indicated that he was amenable to McNaughton, and he was informed that the McNaughton Superintendent/Warden determines work release and/or project position placements. Classification expectations were that the plaintiff would continue with positive adjustment and actively pursue programming as it

was made available. A twelve month recall was scheduled based on the plaintiff's sentence structure.

On May 3, 2008, Heise reviewed the PRC's recommendations and denied them due to the plaintiff's offense and sentence. Heise also noted the plaintiff's return from the FCCC and commented that the recommendations would be reconsidered with a clear intent for parole release plan. The plaintiff maintained his minimum custody level and placement at Oakhill.

The plaintiff appealed Heise's decision on July 11, 2008, stating:

> "for off grounds employment, but requests an up-dated PPI from the agent of record for review at the January, 2009 hearing…."
>
> In keeping with your willingness to reconsider your decision, I hope that this new information represents the clear intent for parole release plan is what you had in mind. I humbly request that you over-turn your prior decision and approve the PRC recommendation of 4/8/08 in light of this new information. Thank you very much for your consideration in this matter.

(Affidavit of Mark Heise, Ex. 109). On October 20, 2008, Konitzer affirmed the original decision and wrote: "The above does not reflect a clear intent to release. It is a positive step and further review may be warranted after the January hearing." *Id.*

On August 28, 2008, the plaintiff again requested an early PRC hearing, noting that Heise stated he would reconsider the last PRC recommendation if there was a clear indication from the Parole Commission in regards to parole planning. The plaintiff attached his latest parole review and asked that it be reviewed for confirmation of a clear intent for parole. A social worker noted that the plaintiff's recall was scheduled for April 2009, and Alt noted Heise's remarks to "reconsider with clear intent for parole

release plan." Alt further noted that on July 10, 2008, Mr. White noted, "All of this will help to lower your risk level, and allow for the possibility of a return to the center system." Alt informed the plaintiff that this was not considered clear intent for release and that classification would seriously consider the center system at the next recall.

The PRC held a recall of the plaintiff's custody on April 4, 2009. The plaintiff chose to appear, and the PRC informed the plaintiff that the purpose of the review was to evaluate custody, program, and placement issues. The PRC noted that at the parole hearing on January 13, 2009, the parole commissioner supported a reduction in custody rating to minimum community custody with a return to the center system for work release opportunities. The plaintiff requested minimum community custody, and the PRC recommended custody reduction to minimum community custody and placement. Classification expectations were that the plaintiff would continue positive adjustment, actively pursue programming as it was made available, and participate in the facilitation of his release planning.

On November 30, 2009, Heise reviewed the recommendations of the PRC and approved the recommendation for minimum community custody at Oakhill. Heise wrote: "[n]ote D-6 and endorsement for community custody and noted his previous placement at FCCC and return due to public sentiment. Community custody approved at OCI which will afford option for work release." (Affidavit of Mark Heise, Ex. 111 at 5). Oakhill provides work release at the warden's discretion for inmates assigned to community custody. However, according to the plaintiff, work release for lifers at Oakhill is in reality non-existent. More than two years later, the plaintiff is

still employed at the Badger State Industries farm instead of outside the institution.

> Jordan appealed the decision on December 2, 2009. He stated:
>
> This appeal is being submitted because this inmate does not believe that he is being fairly considered and that the decisions of the BOCM are politically motivated, deliberately depriving me of my right to fair and equal treatment as well as a meaningful hearing. The parole commission has been consistent in its endorsements and support for return to community custody and placement at a work release center. The OCT PRC has made two recommendations for community custody and placement at a Northern center. I am low in all areas of the risk rating and have completed all essential programs. I have already served three years at two minimum work release centers, one at TCC and two at FCCC. The community sentiment that has been alluded to concerned relocation based on the fact that I was housed across the street from where my crime occurred, and whatever concern that was raised, was raised by people outside the community I was in. Since the BOCM believe that I merit community custody, it should not matter what community I am housed in, as long as it is not Milwaukee. To disapprove the recommendations of the PRC, Parole Commission and the social worker can only be viewed as arbitrary and capricious and I am requesting that you reconsider your decision and grant the PRC recommendation and acknowledge the endorsement of the Parole Commission, in the interest of justice and equality. I would also like for you to explain the rationale behind your decision if you do not agree that a modification is due me.

(Affidavit of Mark Heise, Ex. 112). On February 14, 2010, Konitzer affirmed the original decision: "Minimum community was approved. Due discretion was exercised in continuing OCI assignment. Offense severity considered." *Id.*

All inmates are classified individually, as was done in the plaintiff's classifications. The defendants aver that inmates can and often are paroled directly from maximum, medium, or minimum security facilities. The plaintiff states that this is untrue and that he must go through all the custody levels before parole will be considered.

At no time did Doyle tell other defendants how to exercise their discretion related to evaluation of custody and placement suitability. At no time did Doyle ever tell defendants directly or indirectly to exercise their discretion related to evaluation of custody and placement in a particular way. Doyle had no involvement with the decisions regarding the plaintiff's placement at MSDF or Oakhill, or regarding the plaintiff's custody classification.

3. Plaintiff's Motion to Dismiss Angela Alt

The plaintiff filed a motion to dismiss defendant Angela Alt from the complaint. Although it appears that the plaintiff recognizes that any dismissal would be with prejudice, the court considers it too late in the litigation for the plaintiff to voluntarily dismiss a defendant. Nevertheless, by filing the motion, the plaintiff indicates that he is abandoning his claims against Alt and, as a result, her motion for summary judgment will be granted. *See, e.g., Laborers' Int'l Union of N. Am. v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999) (stating that arguments not presented to the district court in response to summary judgment motions are waived); *Pugh v. City of Attica, Indiana*, 259 F.3d 619, 624 n. 3 (7th Cir. 2001) (same).

4. Defendants' Motion for Summary Judgment

The defendants have moved for summary judgment on the merits of both of the plaintiff's claims. Additionally, they argue that there is no

evidence of personal involvement by defendant Cockroft, Guibord, Alt, Paulsen, Quarles, or Doyle.

The plaintiff opposes the motion and presents what he asserts are five disputed factual issues. However, each of the five issues listed is a question of law, not fact. According to the plaintiff, the affidavits of the plaintiff and the defendants squarely contradict each other as to the steps taken to terminate the work release privileges of the plaintiff and to elevate his custody classification. However, as revealed above in the recitation of the facts, where disputes are noted, there may be some disputes of fact, but they are not material.

4.1 "Class of One" Equal Protection

The plaintiff argues that he was treated differently than similarly situated prisoners due to an illegitimate animus toward him because he was convicted of being party to a crime of first degree murder involving an off-duty City of Milwaukee police officer.

To comply with equal protection, governmental entities are generally required to treat all similarly-situated persons in a similar manner. *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). "To state an equal protection claim, a § 1983 plaintiff must allege that a state actor purposefully discriminated against him because of his identification with a particular (presumably historically disadvantaged) group." *Sherwin Manor Nursing Center, Inc. v. McAuliffe*, 37 F.3d 1216, 1220 (7th Cir 1994). Generally, prisoners do not constitute a suspect class and, thus, state actions concerning prisoners as a group are generally not entitled to heightened scrutiny. *Pryor v. Brennan*, 914 F.2d 921, 923 (7th Cir. 1990). Where the circumstances do not involve a suspect classification such as race or gender, an inmate who

challenges a particular prison practice or regulation must show or indicate that the regulation is not reasonably related to a legitimate governmental concern, or must demonstrate that the challenged regulation or practice is an exaggerated response to those concerns. *See Turner v. Safely*, 482 U.S. 78 (1987); *Caldwell v. Miller*, 790 F.2d 589 (7th Cir. 1986).

However, as noted in the screening order, plaintiff's equal protection is properly characterized as a "class of one" claim. "Class of one" equal protection claims arise without regard to protected-class status where the plaintiff "has been intentionally treated differently from others similarly situated and…there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). In the Seventh Circuit, "class of one" claims under § 1983 require the plaintiff to "present evidence that the defendant deliberately sought to deprive him of the equal protection of the law for reasons of a personal nature unrelated to the duties of the defendant's position." *Hilton v. City of Wheeling*, 209 F.3d 1005, 1008 (7th Cir. 2000). The plaintiff must show that "the cause of the differential treatment of which the plaintiff complains was a totally illegitimate animus toward the plaintiff by the defendants." *Id.*

The defendants contend that they removed the plaintiff from the FCCC and work release because of community objections to the plaintiff's placement in the neighborhood where his offense occurred, and that this is a legitimate factor to be considered under Wis. Admin. Code § DOC 302.07(9). The plaintiff contends that there cannot be documented community concerns under Wis. Admin. Code § DOC 302.13(9) without documents regarding the community concerns. However, this is too narrow a reading of the regulation. It is undisputed that the victim's daughter-in-

law contacted Cockroft and expressed her concern about the plaintiff being housed at the FCCC, across the street from where his crime occurred.

What the plaintiff challenges is the termination of his work release privileges and the upgrade in his security classification. He believes that, even after the expressed community concern, he should have continued to have the same security classification and work release privileges with placement at a different center away from Milwaukee.

Additionally, the plaintiff references the newspaper article he included with his amended complaint and its suggestions that the Governor and the Milwaukee County Sheriff's Department exerted pressure on the DOC regarding the plaintiff's placement, privileges, and security classification. However, the Wisconsin Administrative Code permits the DOC to consider the risk to a victim, witness, the general public or the inmate of placing the inmate in the community where the offense was committed or where the institution is located in assigning a custody classification. Wis. Admin. Code § DOC 302.07. In determining the risk, the department may consider the general public's perception of the offense and the inmate as evidenced by statements of elected officials, judges, sheriffs, district attorneys, a victim, or a witness. *Id.*

The plaintiff is understandably frustrated with defendant Heise's decision, especially since Heise did not uphold the recommendations of the PRC, which were aligned with the plaintiff's desires. Ultimately, though, even if there were complaints or concerns, the decisions regarding the plaintiff were not based on "a totally illegitimate animus toward the plaintiff by the defendants," *Hilton*, 209 F.3d at 1008, but rather permissible concerns based on his crime and its location.

> To succeed on a "class of one" equal protection claim, a plaintiff must prove that the State, without rational reason, treated [him] differently from other similarly situated [prisoners]. The plaintiff bears a very significant burden of offering evidence that other entities are similarly situated in all relevant respects. The plaintiff's evidence must be such that it allows a reasonable jury to eliminate any reasonably conceivable state of facts that could provide a rational basis for the classification.

*RJB v. Properties, Inc. v. Bd. of Educ. of the City of Chicago*, 468 F.3d 1005, 1009-10 (7th Cir. 2006) (internal citations and quotations omitted).

The plaintiff provides information, though not evidence, regarding two other prisoners who were co-defendants and were convicted of the murder of an off-duty police officer during an attempted masked armed robbery. Both were sentenced to more time than the plaintiff and were imprisoned after the plaintiff. The plaintiff argues in his brief in support of his motion for summary judgment that both of them have been granted parole, even after one of them escaped from prison and was on the run three years before he was recaptured and returned to prison. The plaintiff contends that they were paroled without the least bit of fanfare. There is no evidence before the court regarding these allegedly similarly situated individuals, just the plaintiff's argument. Moreover, there is no information regarding whether there were community concerns lodged about them, as the plaintiff did. Even viewing the evidence in the case in the light most favorable to the plaintiff, the court cannot consider the plaintiff's arguments regarding these individuals because they are not supported by evidence.

The defendants assert that the plaintiff's risk rating increased and he was placed at a minimum security institution later, because the plaintiff

received a major conduct report on May 1, 2007. In response to the defendants' proposed findings of fact, the plaintiff argues that the proper procedure was not followed regarding his major conduct report in order for the DOC to consider it with regard to his security classification. The plaintiff does not support his assertions with evidence and, in any event, it does not matter whether the conduct report was a pretense because the DOC had the discretion to consider the community concern in determining the plaintiff's classification and placement. There is no evidence in the record to suggest that the DOC's decisions, or those of its employees, did not have a rational basis. Summary judgment in favor of the defendants is appropriate on this claim.

### 4.2 Conspiracy

"[C]onspiracy is not an independent basis of liability in §1983 actions." *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008) (citing *Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000)). Thus, because the defendants are entitled to summary judgment on the plaintiff's "class of one" equal protection claim, his conspiracy claim also fails.

### 5. Plaintiff's Motion for Summary Judgment

Because the defendants are entitled to summary judgment on each of the plaintiff's claims, the court need not address the plaintiff's motion for summary judgment.

Accordingly,

IT IS ORDERED that the plaintiff's motion for summary judgment (Docket #41) be and the same is hereby DENIED;

IT IS FURTHER ORDERED that the plaintiff's motion to dismiss Angela Alt from the complaint (Docket #62) be and the same is hereby DENIED;

IT IS FURTHER ORDERED that the defendants' motion for summary judgment (Docket #45) be and the same is hereby GRANTED and this action is DISMISSED on its merits, with prejudice.

IT IS FURTHER ORDERED that the Clerk of Court shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 7th day of March, 2012.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge